UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

PATRICIA A. PRINCE,          )      Case No.  5:08 CV 1975
                        )
          Plaintiff,    )
                        )
     vs.            )      MEMORANDUM OPINION
                        )
COMMISSIONER OF        )
SOCIAL SECURITY,        )
                        )
         Defendant.   )      Magistrate Judge James S. Gallas
                        )

Patricia A. Prince  filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) and §1383(c)(3) from the administrative denial of supplemental security income.  At issue is the ALJ's decision dated July 30, 2007, which stands as the final decision of the Commissioner.  See 20 C.F.R. §416.981.   The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Prince was 53 years of age at the time of the administrative decision and has a high school education.  Her limited past relevant work experience is as a housekeeper and packer/assembler. The triggering event for her application for benefits was an April 5, 2004 motor vehicle collision where she was rear-ended and diagnosed with dorsal lumbar strain. (Tr. 136). The Commissioner found that Prince has not engaged in substantial gainful activity since March 11, 2005 (her application date), and that Prince suffers from severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the sacroiliac joints and obesity. The Commissioner

05: 08 CV 1975                                            2

determined that Prince's other impairments of sleep apnea, diabetes and a knee problem did not

constitute severe impairments. (Tr. 22). The administrative conclusion was that Prince is not

disabled because she can perform her past relevant work as a housekeeper and packer/assembler

based on a residual functional capacity for light work and the testimony from a vocational expert.

Prince challenges this conclusion contending: that she has established disability with the opinion

from her treating physician, Dr. Naomi Busch; that the Commissioner erred in discrediting Prince's

alleged disabling pain; and that the Commissioner lacked substantial evidence to find her capable

of light work that exists in significant numbers in the national economy.


*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial

evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that

a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v.*

*Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*,

974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see

*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could

support a decision the other way").


*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation.

This evaluation begins with the question whether the claimant is engaged in substantial gainful

activity and then at the second step whether there is a medically severe impairment.  See

05: 08 CV 1975                                            3

§404.1520(a)(4)(i) and (ii) and §416.920(a)(4)(i) & (ii). At the third step of a disability evaluation

sequence the issue is whether the claimant has an impairment which meets or equals a listed

impairment from the Listing of Impairments of Appendix 1.  See 20 C.F.R. §404.1520(a)(iii) and

(d); §416.920(a)(iii) and (d).  If an impairment exists which meets the description from the listing

or is its equivalent, the claimant is deemed disabled at that point without consideration of age,

education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291,

96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967

(1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to

a listed impairment, he is presumed unable to work and is awarded benefits without determination

whether he can perform his prior work or other work.")."At the fourth step of the sequential

approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable

to perform her previous type of work."  *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467,

2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815

F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an

individual cannot perform past relevant work, then the burden of going forward shifts to the

Commissioner at the fifth step to demonstrate the existence of types of employment compatible with

the individual's disability.  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820

F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r

of Soc. Sec*., 203 F.3d 388, 391-92 (6th Cir. 1999).

05: 08 CV 1975                                              4

*Credibility*:

Prince argues that her credibility was wrongly challenged. The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act.  See *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Credibility determinations track pain analysis.  See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Sadler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3).

The ALJ's discussion of this issue must contain clearly stated reasons. *Felisky v. Bowen*, 35 F.3d at 1036(citing *Auer v. Secretary of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987)). It is critical that the ALJ provide reasons which are "sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Social Security Ruling (SSR) SSR 96-7p, 1996 WL 374186 *1-2; *Sadler* at *2.

The ALJ acknowledged SSR 96-7p in assessing credibility. (Tr. 23-24).  However, the ALJ need not refer specifically to Social Security Rulings. What matters is whether the ALJ conducts the analysis required by the rulings. See *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 835 (6th Cir. 2006). The format set forth in SSR 96-7p outlines the administrative evaluation process beginning

05: 08 CV 1975                                    5

with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under

20 C.F.R. §404.1529(c)(3) and §416.929(c)(3).  See *Duncan v. Secretary of Health & Human

Services*, 801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247

(6th Cir. 2007). Under the two-prong  pain analysis, there first must be a determination whether there

exists an underlying medically determinable physical or mental impairment followed by the question

whether the impairment would be reasonably expected to produce the individual's pain or other

symptoms. SSR 96-7p, 1996 WL 374186 at *2.  [1]


    The second question then is the reasonableness of the alleged debilitating pain or other

subjective condition. The mandated considerations require the ALJ to investigate subjective

complaints of pain or other symptoms based on:

    1.    The claimant's daily activities;

    2.    The location, duration, frequency,  and intensity of pain;

    3.    Precipitating and aggravating factors;

    4.    The type, dosage, effectiveness, and side-effects of medication to alleviate
        pain or other symptoms;

    5.    Treatment, other than medication claimant has received for relief of pain; and

    6.    Any other measures used to relieve pain (e.g. lying down or changing
        position).

    7.    Other factors concerning functional limitations and restrictions due to pain
        or other symptoms.

---

[1] Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and order and statements of policy and interpretations" that have been adopted.  20 C.F.R. 402.35(b)(1). See *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d  830,  834 (6th Cir. 2006), citing *Blankenship v. Bowen*, 874 F.2d 1116, 1119 n. 9 (6th Cir. 1989).

05: 08 CV 1975                                    6

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(I-vii); §416.929(c)(3)(I-vii).


The ALJ set out the required format superficially, but failed to apply it. Instead, the ALJ discounted Prince's description of the severity of the intensity, persistence and limiting effects of her symptoms because he found them to be "not entirely credible" for two reasons, she functioned as the primary care-provider for her sister, and that Prince lost her prior employment due to disagreements with supervisors. (Tr. 25).


First, the Commissioner stated that  there was evidence in the record that Prince cared for her sister when she had denied doing so and stated that she had never cared for her sister with Alzheimer's disease. (Tr. 25). The Commissioner argues that it was more than reasonable for the ALJ to question Prince's testimony that she only visited and sat with her (Tr. 269), when her social worker's notes consistently document family stressors related to the care of her sister. That is an untruth. (See Tr. 166, 168, 170). The social worker's statements do not establish that Prince was dishonest when she testified that her sister with Alzheimer's, Dot, was taken care of by someone else, and that she did not care for her sister beyond sitting and visiting with her, and sometimes feeding her. (Tr. 269).


The social worker had actually stated Patricia Prince was not a primary caregiver:

Pt. [patient (Prince)] also indicated that family situation has become even more chaotic since her sister Sue had a "massive coronary"& "stroked out" on Mon. 11/7. Sue was the primary caregiver for their sister [with] Alzheimer (Dot) & Sue's mo. [mother].  Sue's dau. [daughter] and son-in-law have moved in & have "taken over" (POA). So they decide when & if Patricia can be involved.

05: 08 CV 1975                                    7

(Tr. 170).

Other comments made by the social worker did not contradict the statement that Sue's daughter and

son-in law were the primary caregivers for Dot.  The social worker had also remarked  that there was

"more pressure being placed on Patricia to provide care,"  (Tr. 166), Another comment was:

> Her family situation only continues to get more complicated her sister with
> Alzheimer's disease (Dot) has become incontinent and has to wear diapers. . . . [the
> other sister] Sue wants her to babysit for her mother.  However, it is also to some
> extent 'letting me off the hook' because now Sue has someone else for backup for
> their sister, Dot.

(Tr. 168).

The other remark from the social worker was:

> She described the ongoing chaos at the family home where her sister will be
> returning from the hospital soon, and her sister's mother will have to go to a nursing
> home as soon as a bed is found. . . . However, it sounds like Ms. Prince is being
> included more in the whole arrangement than she had been.

(Tr. 170).


The ALJ somehow determined that "these references suggest the claimant is the primary

caregiver for her sister with Alzheimer's" (Tr. 25). They do not. They do not even rise to the level

of ambivalent statements which the ALJ could construe against Price.  At most the statements from

the social worker show that Prince was asked to babysit for her sister's mother, and she was

"pressured" to provide care. Whether she in fact did babysit her sister's mother or did provide care

for Dot is not in evidence in this record beyond Prince's testimony that she provided very limited

care for Dot. The Commissioner's adopted conclusion was not supported by substantial evidence.

05: 08 CV 1975                                      8

Prince adds that the ALJ's questions at the administrative hearing were phrased in the present, not past tense, and the social worker's report was two years old by that time.  This is a valid additional argument why the ALJ lacked evidence to discredit her testimony, although this is perhaps overkill for Prince's point that it was error to discredit her.

The second set of reasons which the ALJ used to discredit Prince was that she "lost" her jobs due to disagreements with supervisors, she failed to use job skill training benefits, and she did not have a long and steady employment history.  First, Prince had testified that she was "fired" from her job at Sterling Silver Co. over a disagreement with her supervisor (Tr. 262), but she did state that her successive jobs have been temporary work or as a newspaper carrier (Tr. 259-62). The discrepancy between losing a job or being fired from a job is only a matter of semantics, and inconsequential. Further, there is logic behind the conclusion regarding a lack of a long and steady employment history. The record does indeed establish Prince's patchy employment history.   The ALJ's inclusion of the prior work record in assessing credibility is sound.  "ALJs are specifically instructed that credibility determinations should take account of 'prior work record.'" *Schaal v. Apfel,* 134 F.3d 496, 502 (2nd Cir.1998)(quoting SSR 96-7p, TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at * 5). The lack of steady employment history is a valid basis for discrediting a claimant.

However, the second reason is failing to use job skill training benefits, and this reason lacks a logical nexus to the record. The Commissioner points out that Prince had testified that she went

05: 08 CV 1975                                   9

to job skill training in an industrial sewing program (Tr. 257).    There is nothing to counter this claim in the record and it is noted that the ALJ provides no citation to the record to support the finding of alleged inconsistency between Prince's testimony that she went job skill training and the ALJ's conclusion that  Prince had failed to use industrial job skills training benefits. This reason to discredit Prince has no support in this  record.

The Court is confronted with a determination rejecting Prince's credibility for two flawed reasons. One which lacks support from the record and another which is directly contradicted by the record. The only reason supported by the record is Prince's lack of  steady employment. Overall, the Commissioner's adopted decision to reject Prince's credibility was not supported by substantial evidence.

*Evaluation of opinion from the treating physician:*

In February 2005, treating physician, Dr. Busch, reported that Prince had type II diabetes, hypertension, high cholesterol, and chronic back and thoracic pain secondary to motor vehicle collision and an October 2003 car jacking,  and obesity. (Tr. 245).  Dr. Busch believed that Prince could lift up to 10 pounds,  stand/walk up to 3 hours in a workday and sit up to 3 hours in a workday (Tr. 246). Bending was precluded, but Prince could push/pull and reach within moderate tolerances, and had no limitations on handling, or repetitive foot movements. (*Id*.). The doctor concluded that nonetheless, Prince was employable (*Id.*). In June 2007, the doctor submitted a follow-up residual functional capacity restricting Prince to lifting 15 pounds, 10 frequently, four hours standing, and

05: 08 CV 1975                                    10

4 hours sitting at 30 minute intervals (Tr. 241). These findings were based on degenerative disc disease, and back pain. (Tr. 242).

      The ALJ found that Prince could lift/carry 20 pounds occasionally and 10 pounds frequently and stand/walk 6 hours of a workday. (Tr. 23). The ALJ rejected Dr. Busch's opinion pointing out: that the February 2005 assessment is more restrictive than that from June 2007, while Prince claimed to have more limitation now than she had in the past; that  Dr. Busch found that Prince was employable; and , the June 2007 assessment is consistent with a range of sedentary to light work, and that the doctor supports these assessments with only diagnoses. (Tr. 25-26). The ALJ also pointed out with respect to Prince's complaints of knee problems, that there had been a prior right knee arthroscopic surgery but Dr. Busch made no mention of any limitation associated with her knee (Tr. 22).

      In determining the question of substantiality of the evidence, reports of physicians who have provided treatment over a long period of time are entitled to greater weight than the reports of physicians employed by the government for the purpose of defending against a claim for disability. See 20 C.F.R. §404.1527(d)(2); §416.927(d)(2).; 20 C.F.R. §404.1527(d)(3); §416.927(d)(3). This is commonly known as the "treating physician rule." See *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *Wilson* v. *Commissioner of Soc. Sec.*, 378 F.3d 541, 544(6th Cir. 2004). The ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and

05: 08 CV 1975                                    11

"not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner,*

378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2).


      Reversal is required when in rejecting a treating physician's opinion the ALJ failed to give

"good reasons" for not giving weight to that opinion. See *Wilson v. Commissioner of Soc. Sec.*  378

F.3d 541, 544 (6th Cir. 2004).  This requirement for articulated "good reason" has been long

recognized since at least SSR Rulings 96-2p and 96-5p, as cited by Prince, which require the ALJ

to articulate specific legitimate reasons supported by substantial evidence in the record that are

sufficiently specific to make clear to subsequent review as to the weight the adjudicator gave to the

treating source's medical opinion and the reasons for that weight. Supportability is fairly obvious

to determine if it is based on the laboratory findings and medical signs. Consistency is simply

consistency "with the record as a whole." Supportability of the medical opinion of disability has

long been a key factor in determining how much weight to give the opinion.  The ALJ *must* apply

the regulatory factors of this section when explaining why the treating source was not accorded

controlling weight.  *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007), citing

*Wilson*, 378 F.3d at 544. The ALJ also must consider the medical opinions "together with the rest

of the relevant evidence."  See 20 C.F.R. §416.927(b).


      The ALJ made a fair assessment of the evidence in the record on the points addressed.  First,

the ALJ may discredit a treating physician's opinion when there has been conflicting unsupported

changes in the opinion on claimant's residual functional capacity. See  *Stanley v. Department of*

*Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994); *Boggle v. Sullivan*, 998 F.2d 342, 348

05: 08 CV 1975                                        12

(6th Cir. 1993).  20 C.F.R. §404.1527(d)(4); §416.927(d)(4). Also the fact  that the doctor provided

only diagnoses for support is another "good reason."  Supportability takes into account medical

evidence *and explanation*. [2]  The ALJ is not bound by a conclusory opinion which is unsupported

by detailed objective criteria, or when there is substantial medical evidence to the contrary.  *Cutlip*

*v. Secretary*, 25 F.3d 284, 286 (6th Cir. 1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir.

1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). This has been incorporated into the

regulatory scheme under §404.1527(d)(2) and its SSI counterpart §416.927(d)(2), which require that

the treating physician's opinion must be "well-supported by medically acceptable clinical and

laboratory diagnostic techniques."  This includes reporting :  (1) treatment provided; (2) extent of

examination; and (3) testing (20 C.F.R. §404.1527(d)(2)(ii) and §416.927(d)(2)(ii)).  Further, the

ALJ was correct that Dr. Busch did state in the first residual functional assessment that Prince was

employable. The ALJ was also correct that Dr. Busch did not mention any diagnosis associated with

the prior right knee surgery or other findings from the Spine Center. (Tr.  181, 188, 204).


Prince argues that the standing and walking restrictions imposed by Dr. Busch were an

expression of Prince's knee impairment.  However, the doctor did not list any knee-related diagnosis

as supporting the residual functional capacity or incorporate the findings Prince refers to from other

doctors.  Dr. Busch simply failed to provide adequate support for her assessments.  The

determination was a fair reading of Dr. Busch's  residual functional capacity assessments.

Accordingly, the Commissioner gave some "good reasons" for discounting Dr. Busch's opinions.

---

[2] "The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 416.927(d)(3).

05: 08 CV 1975                                    13

Ultimately however,  Prince is correct that the ALJ failed to engage in the mandated analytical process. The ALJ *must* apply the regulatory factors of this section when explaining why the treating source was not accorded controlling weight. *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544. "Specifically, § 404.1527(d) [and its SSI counterpart §416.927(d)] of the [Social Security Administration]'s regulations prescribe[] that the ALJ is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source." *Bowen*, 478 F.3d at 747; *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). The ALJ's determination did not utilize these 5 mandated considerations fully. "An agency's failure to follow its own regulations 'tends to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process." *Wilson*, 378 F.3d at 545(quoting *Vitarelli v. Seaton,* 359 U.S. 535, 547, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959)).  The determination did not employ all five considerations in reaching the conclusion to reject the opinion from Dr. Busch.

Given that remand has become necessary due to the ALJ's mishandling of credibility analysis, it would be futile for the court to delve into harmless error analysis with regard to the considerations missed in the ALJ's analysis of Dr. Busch's opinion. So, on remand the ALJ may specifically address each of the five considerations.  As it stands now, though, the Commissioner adopted an incomplete assessment of the treating physician's opinions, and remand is required.

05: 08 CV 1975                                          14

*The Commissioner's Light Work Capability Finding:*

Prince argues that the ALJ failed to include all of the limitations ascribed by Dr. Busch in the hypothetical question to the vocational expert. Prince contends that the limitations contained in Dr. Busch's reports would limit Prince to sedentary work and under that category, no employment exists.   However, the vocational expert actually stated that this would place Prince in a range of more than sedentary but less than the full range of light work (Tr. 280). The vocational expert based the conclusion that Prince was disabled on the hypothetical question which accepted Dr. Busch's restrictions to less than an 8-hour workday. (Tr. 280).  The vocational response that Prince would be disabled was not due to a sedentary work restriction, but due to a restriction to a short workday.

In any event, because the Commissioner's adopted decision improperly assessed Prince's credibility and was a somewhat incomplete analysis of the treating physician's opinions, the Court cannot assess whether the ALJ's hypothetical question to the vocation expert (which omitted Dr. Busch's limitations) was inaccurate. See *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987); *Howard v. Commissioner*, 276 F.3d 235, 239 (6th Cir. 2002)(A vocational expert's opinion cannot constitute substantial evidence unless the expert <u>precisely</u> considers the particular physical and mental impairments affecting claimant.).  The question is essentially premature at this time.

*Remand:*

Congress has authorized remand or remand to the Commissioner under the fourth sentence of 42 U.S.C. §405(g).  See *Faucher v. Secretary of HHS*, 17 F.3d 171, 174-75 (6th Cir. 1994), citing *Sullivan v. Hudson*, 490 U.S. 877, 880, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Generally, when

05: 08 CV 1975                                        15

one of the ALJ's factual findings is not supported by substantial evidence, recourse is through a

remand under the fourth sentence.  *Faucher*, 17 F.3d at 175-76.  The Commissioner's decision may

be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof

of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.

*Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d at 176;  *Mowery v.*

*Heckler*,  771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir.

1983).


       Prince has established that the ALJ lacked substantial evidence to support the conclusion that

the burden had not shifted onto the Commissioner to demonstrate the existence of types of

employment compatible with the individual's disability. See  *Allen v. Califano*, 613 F.2d 139 (6th

Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918,

926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999). The

Commissioner's adopted determination mishandled Dr. Busch's residual functional assessments and

provided no rational reason to discredit Prince. However, this determination was based on some

evidence in the record, the residual functional capacity assessment from  non-examining state

agency physicians (Tr. 149-156). It is interesting to note that the state agency physician assessment

gave Prince partial credibility (Tr. 154). However, these physicians  opined that Prince could

perform light work of lifting 20 pounds, and sitting or standing for 6 hours each of the workday with

occasional stooping, kneeling, and crouching (Tr. 150-51). Thus there was some support for the

decision so that  ALJ's decision was not clearly erroneous and proof of disability was neither strong

nor one-sided.

5:08 CV 1975                                      16

## CONCLUSION

The issues before this court must be resolved under the standard of whether the determination is supported by substantial evidence of record.   "Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986) (stating that this court's review "is limited to determining whether there is substantial evidence in the record to support the findings")."   *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).   Based on the arguments presented, the record in this matter and the applicable law, the undersigned finds that the Commissioner's determination denying supplemental security income was not supported by substantial evidence and must be reversed and remanded under the fourth sentence of 42 U.S.C. §405(g) for more complete evaluation of the opinion from the treating physician and correct evaluation of credibility in accordance with the administrative regulations and rules.


                                        _____s/James S. Gallas_____
                                        United States Magistrate Judge